UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| BUTTERNUT STREET | ) Case No. 09-00470 |
| DEVELOPMENT, LLC | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**AMENDED PLAN OF REORGANIZATION PROPOSED BY
BUTTERNUT DEVELOPMENT, LLC
<u>DATED MAY 7, 2010</u>**

Janet M. Nesse, DC Bar #358514
STINSON MORRISON HECKER LLP
1150 18th Street, Suite 800
Washington, DC 20036
Tel. (202) 785-9100
Fax. (202) 785-9163
jnesse@stinson.com

## INTRODUCTION

This Plan of Reorganization ("Plan") is proposed by Butternut Street Development, LLC ("Debtor"), the Debtor in Possession in Case No. 09-00470, in the United States Bankruptcy Court for the District of Columbia, under Chapter 11 of the Bankruptcy Code, for the resolution of the Debtor's outstanding creditor claims and equity interests. Capitalized terms used but not defined in this Introduction have the meanings ascribed to them in Article I.B. of this Plan. Reference is made to the Disclosure Statement (as defined below) for certain related matters. The Debtor is the proponent of this Plan within the meaning of § 1129 of the Bankruptcy Code (as defined below).

This Plan calls for the Debtor to continue operating in the ordinary course of business. Under § 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan may not be solicited from a Claimholder or Equity Interest Holder until the Disclosure Statement has been approved by the Bankruptcy Court (as defined below) and distributed to Claimholders and Equity Interest Holders. Reference is made to the Disclosure Statement filed simultaneously with this Plan for a discussion of the Debtor's history, business, results of operations, actions and activities undertaken by the Debtor during the course of this bankruptcy proceeding, and for an analysis of this Plan. ALL CLAIMHOLDERS AND EQUITY INTEREST HOLDERS WHO ARE ELIGIBLE TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article 10.2 of this Plan, the Debtor expressly reserves the right to alter, amend or modify this Plan, one or more times, before the Plan's substantial consummation.

## ARTICLE I
## DEFINITIONS

**A.    Scope of Definitions.**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms, not otherwise defined shall have the meanings ascribed to them in Article I.B. of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

B. **Definitions.**

1.1 **413-415** means the real property located at 413-415 Butternut Street, Washington, DC 20012.

1.2 **422** means the real property located at 422 Butternut Street, Washington, DC 20012.

1.3 **Adams** means The Adams National Bank.

1.4 **Administrative Expense Claim** means a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code, including but not limited to the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, Professional Claims, and all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

1.5 **Allowed Claim** means a Claim (whether a Secured Claim, Administrative Claim, Priority Claim, or Unsecured Claim) or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the expiration of such applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied pursuant to a Final Order; (c) that has been allowed pursuant to a Final Order; (d) as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly allowed in the Plan or Confirmation Order; or (f) that is not subject to disallowance under Bankruptcy Code § 502(d).  Unless otherwise specified in the Plan or in the Final Order allowing such Claim, or if such Claim is over-secured under § 506(b), an Allowed Claim shall not include interest on the amount of such Claim maturing or accruing from and after the Commencement Date, or any punitive or exemplary damages, or any fine, penalty or forfeiture.  An "**Allowed Secured Claim**" is an Allowed Claim that is a Secured Claim; an "**Allowed Administrative Claim**" is an Allowed Claim that is an Administrative Claim; an "**Allowed Priority Claim**" is an Allowed Claim that is a Priority Claim; and an "**Allowed Unsecured Claim**" is an Allowed Claim that is an Unsecured Claim.

1.6 **Assets** means all assets of the Debtor as of the Effective Date.

1.7 **Ballot** means each of the ballot forms that are distributed to holders of Claims or Interest who are included in Classes that are entitled to vote to accept or reject the Plan.

1.8 **Bankruptcy Case** or **Case** means the above-captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

3

    1.9    **Bankruptcy Code** or **Code** means the Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

    1.10    **Bankruptcy Counsel** means the law firm Stinson Morrison Hecker LLP

    1.11    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Columbia or such other court as may have jurisdiction over the Bankruptcy Case.

    1.12    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

    1.13    **Bar Date** means the date fixed as the last day for filing proofs of claim in the Bankruptcy Case by the Bankruptcy Court: October 19, 2009 for non-governmental claims.

    1.14    **Business Day** means any day other than a Saturday, a Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

    1.15    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently United States Dollars.

    1.16    **Claim** means a claim (as defined in § 101(5) of the Bankruptcy Code) against the Debtor that is either a Secured Claim, Administrative Claim, Priority Claim, or Unsecured Claim.

    1.17    **Claims Objections** means the objections to claims that have been or may be filed against the holders (or purported holders) of Claims.

    1.18    **Class** means a class of Claims or Interests established pursuant to Article II of the Plan.

    1.19    **Confirmation** means the confirmation of the Plan pursuant to the Confirmation Order.

    1.20    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

    1.21    **Confirmation Hearing** means the hearing conducted by the Court on confirmation of the Plan and related matters under § 1128 of the Bankruptcy Code.

    1.22    **Confirmation Hearing Notice** means the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the Confirmation Hearing and the time for filing objections to the confirmation of the Plan.

    1.23    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan.

1.24    **Creditor** means any Entity that holds on the Effective Date a Claim against the Debtor that arose or is deemed to have arisen before the Effective Date, including a Claim against the Debtor of a kind specified in § § 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.25    **Debtor** means Butternut Street Development, LLC.

1.26    **Disallowed Claim or Disallowed Interest** means a Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a Bar Date has been set but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.27    **Disclosure Statement** means the written Disclosure Statement that relates to this Plan (and all exhibits and schedules annexed thereto or referred to therein) as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented.

1.28    **Disputed Claim or Disputed Interest** means any Claim, or portion thereof, or an Interest or any portion thereof (including, but not limited to, Administrative and Priority Claims), not otherwise an Allowed Claim or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Debtor's Schedules as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (b) proof of which was required to be Filed by the Plan or by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent or disputed; (d) that is disputed in accordance with the provisions of this Plan; (e) as to which a party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or is otherwise disputed by a party in interest in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; or marked for an objection.  Any portion of a Claim which is not disputed by a party in interest shall, for purposes of receiving distributions under the Plan, be deemed to be an Allowed Claim.  A Claim may be a Disputed Claim regardless of whether such Claim is classified.

1.29    **Disbursing Accounts** means one or more accounts set up by the Disbursing Agent.

1.30    **Disbursing Agent** means Marc Albert of Stinson Morrison Hecker LLP.  As Disbursing Agent, Mr. Albert will be responsible for making all distributions under the Plan.

5

1.31    **Effective Date** means the thirtieth (30th) day after the date on which the Confirmation Order becomes a Final Order, except that, if such date is a Saturday, Sunday or legal holiday, such date shall be the next business day thereafter.

1.32    **Entity** means an individual, corporation (of any type), limited liability company, partnership (of any type), association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, governmental unit, official or unofficial committee of creditors or equity holders or other entity.

1.33    **Estate** means the estate created by the commencement of the Bankruptcy Case under § 541 of the Bankruptcy Code.

1.34    **Face Amount** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.35    **File** or **Filed** means to file or to have filed with the Clerk of the Bankruptcy Court in the Bankruptcy Case.

1.36    **Final Distribution Date** means the date when all proceeds of sale or operation of 433 and 413-425 are distributed.

1.37    **Final Order** means an order or judgment of any court, administrative agency, or other tribunal as to which (a) the time has expired within which a proceeding for review (whether by way of rehearing, appeal, certiorari or otherwise, but not pursuant to Bankruptcy Code § 1144 or Bankruptcy Rule 9024) may be commenced, without any such proceeding having been commenced, or (b) if such a proceeding has been timely commenced, such order or judgment has been affirmed by the highest tribunal in which review is sought or such proceeding for review was otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.38    **Impaired** refers to any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.39    **Interest** means (a) the legal, equitable contractual and other rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of any Person with respect to voting stock, non-voting stock, or any other equity securities of Debtor and (b) the legal, equitable, contractual and other rights, whether fixed or contingent, matured or unmatured, disputed or undisputed, of any Person to purchase, sell, subscribe to, or otherwise acquire or receive (directly or indirectly) any of the foregoing.

1.40    **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended.

1.41    **Lien** has the meaning given in § 101(37) of the Bankruptcy Code.

6

1.42    **Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code), or other entity.

1.43    **Petition Date** means June 2, 2009, the date on which the Debtor filed the petition commencing the Chapter 11 Case.

1.44    **Plan** means this Plan, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

1.45    **Priority Claim** means any Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority under § 507(a) of the Bankruptcy Code.

1.46    **Professional Claim** means a Claim of a professional retained in the Chapter 11 Cases pursuant to §§ 327 and 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

1.47    **Pro Rata** means, unless the Plan specifically provides otherwise, with respect to Claims, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

1.48    **Retention Fund** means the bank account containing funds available for distribution to the Administrative Expense Claims and Allowed Unsecured Claims through the Final Distribution Date.

1.49    **Scheduled** means set forth on the Schedules.

1.50    **Schedules** means the schedules of assets and liabilities Filed by the Debtor, as the same may be amended from time to time prior to the Effective Date.

1.51    **Secured Claim** means any Claim of a Creditor that is secured by a Lien on property of the Debtor or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined (or determinable) pursuant to § 506(a) of the Bankruptcy Code.

1.52    **Security** shall have the meaning ascribed to it in § 101(49) of the Bankruptcy Code.

1.53    **TRF** means The Reinvestment Fund.

1.54    **Unimpaired** refers to any Claim or Interest which is not Impaired.

7

1.55    **Unsecured Claim** means a Claim other than a Secured Claim, Administrative Claim, or Priority Claim.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    General.

The following is a designation of each Class of Claims and Interests under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes. Each "Class" is separate and distinct from all other Classes for all purposes.

2.2    Classification.

Claims and Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

**Class 1:**    Secured Claims. This Class includes Three subclasses:

Class 1A: Adams National Bank.
Class 1B: TRF.
Class 1C: Keys Ridge Construction Company.

**Class 2:**    Priority Claims for Taxes, Wages, Salaries and Commissions.

**Class 3:**    Non-Affiliated Unsecured Non-Priority Claims.

**Class 4:**    Affiliated Unsecured Non-Priority Claims.

**Class 5:**    Interests.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1    Class 1A: Adams National Bank: The Debtor believes that the Adams Secured Claim is no more than approximately $5,200,000 and may be less to the extent that it has caused delay and interfered in the project. For each unit sold in 422, TRF will receive all proceeds and Adams will receive all other proceeds as set out in the Consent Order entered by the Court until the additional funds advanced by TRF are repaid. From the time that TRF advances additional funds, as approved by the Court, Adams will receive monthly interest payments at a raid of 3% per annum on the unpaid balance, which is 50% of the contract rate. After the TRF additional funding is repaid, Adams will receive the net proceeds of sale of units in 422 after payment of costs of closing, commissions, and other required closing costs. Any amounts unpaid after the sale of units in 422 will receive monthly interest payments based upon and annualized rate of 6%

8

of the outstanding balance on a ten year schedule until paid in full, but no later than December 31, 2011.

       3.2       Class 1B:  TRF.  TRF has a prepetition claim of approximately $ 500,000.  In addition it is advancing funds for completion 422.  It will be repaid in full on its additional funds and will retain its lien on 413-415.  It will be paid either from sale of units in 413-15 or by a replacement lender that provides that TRF will be paid as part of its advances.  TRF's pre-petition claim is subordinate to the secured Claim of Adams.

       3.3       Class 1C:  Keys Ridge Construction Company:  Keys Ridge Construction Company has a partially secure Claim of approximately $1.2 million arising from pre-petition work on the project.  50% of its Claim will be treated as a secured claim and will be paid, without interest, as units sell in 413-15.  The balance of the Claim will be a Class 3 unsecured claim.  This Claim is not disputed and is junior to the secured claims of Adams and TRF.

       3.4       Class 2:  Priority Claims for Taxes, Wages, Salaries and Commissions:  Holders of an Allowed Class 2 Priority Claim shall be paid, in full, on the later of the Effective Date, or thirty (30) days after such claim becomes Allowed.  Debtor believes there are no unsecured Priority Claims.

       3.5       Class 3:  Non-Affiliated Unsecured Non-Priority Claims:  Holders of Class 3 Unsecured Claims shall receive Pro Rata distributions from the available cash in the Retention Fund on the Final Distribution Date.

       3.6       Class 4:  Affiliated Unsecured Non-Priority Claims:  Holders of Class 4 Affiliated Unsecured Non-Priority Claims shall receive Pro Rata Distribution from available cash after payment of Class 3 Creditors in full. Affiliated Unsecured Non-Priority Claims are defined as Claims held by those with a direct or indirect interest in the Debtor or an entity that has common ownership with the Debtor.

       3.7       Class 5:  Interests:  If all Class 3 and 4 Claims are paid in full, then Class 5 Interests shall receive Pro Rata distribution from the Retention Fund on the Final Distribution Date.

       3.8       Administrative Expense Claims:  Administrative Expense Claims include, but are not limited to, the U.S. Trustee's quarterly fees, Debtor's bankruptcy counsel's fees and Allowed Claims of professional persons for actual and necessary services rendered for the benefit of the Bankruptcy Estate during the pendency of the Bankruptcy Case.  These are anticipated as well as any amounts advanced by Adams pursuant to its cash collateral order.  Adams has not made any additional advances that have not been repaid at lot closing, so the Debtor believes that it does not have an Administrative Claim.  The Debtor anticipates that Administrative Expense Claims will not exceed $150,000. Fees for Debtor's counsel will be paid from the retainer that it is holding.  As the retainer was not provided from the Debtor, it is not subject to the claims of creditors.  Additional amounts due to Debtor's counsel will be paid from proceeds of sale of units after payment of required payments to secured creditors.

9

Each Allowed Administrative Expense shall be paid, in full, on the later of the Effective Date or thirty (30) days after such Claim is allowed, or upon such other terms as may be agreed to by the holders of such Claims and Debtor.  Debtor believe the only two Allowed Administrative Expense Claims will be U.S. Trustee's quarterly fees (which are current) and those of its Bankruptcy Counsel.  Stinson has agreed to accept deferred payments, to the extent fees exceed the $56,000 retainer it is holding, and shall be paid out of the Retention Fund as cash becomes available.

3.9    Statutory Fees and Continuing Duties to the Office of the U.S. Trustee.  All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in full, on the Effective Date, in an amount equal to the amount of the Allowed Administrative Expense Claim.  These Claims are Unimpaired.

## ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1    Unless previously rejected by order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code, or by operation of law, on the Effective Date, all other agreements, contracts and leases of the Debtor shall be rejected pursuant to Bankruptcy Code § 365.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections pursuant to Bankruptcy Code § 365, as of the Effective Date.  Any Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order or be forever barred and unenforceable against the Debtor, its Estate, its property, and the holder shall be barred from receiving any distribution under the Plan on account of such Claim.  A separate notice of the deadline for filing a lease rejection claim will be mailed to each party to a rejected lease along with the notice of entry of the Confirmation Order.

## ARTICLE V
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

5.1    Overview.

The Plan is based on the orderly completion and sale of units in 422.  Debtor believes that the value received from the sale of the units in 422 will be maximized if it completes construction of the units, and then sells them in the ordinary course of business.  This is supported by the appraisal commissioned by Adams.  Sale of the 422 units should be sufficient to pay off funds owed to Adams, the new funds advanced by TRF, and the taxes owed to the District of Columbia.  Operation or sale of 413-415 will then provide the funds to pay the balance of the TRF claim, and the claims of the other creditors.

5.2    Sale of Units in 422.

Presently there are 30 mostly completed condominium units  (ranging from 90% to 70% complete). Once the plat is recorded and units are complete, they will be ready for individual sale.  The Debtor has approximately 14 contracts at this time, for sale of units in 422. The Debtor

10

is confident that Adams will be paid in full from the sale of condominium units, but to the extent Adams is not paid in full, it shall retain its lien on 413-415. If the sale of units in 422 are sufficient to satisfy the claims of Adams, in full, any excess proceeds shall first be paid to TRF and then used to help fund the Retention Fund.

5.3    Disposition of 413-415.

The Debtor is working to obtain separate financing for the renovation and sale of condominium units in 413-15.  TRF, the existing lender, has expressed an interest in providing funds for the renovation of 413-415 and sale of condominium units.  It is anticipated that the new lender would pay off any remaining balance of the Adams loan and assume its lien position on the 413-415 building.  If for some reason, the sales in 422 do not support this development plan then the Debtor will sell 413-15.  The Debtor reserves the right to sell 413-415 for a price of not less than the amount of the secured debt, or such lesser amount as the secured creditors agree to accept without further order of this Court.  Any excess funds would be used to fund the Retention Fund.  After the sale of units in 422 is complete, Debtor will pay debt service to TRF and to Adams until the liquidation of 413-15 is complete or they are paid in full, whichever is earlier.  Debtor will pay simple interest monthly at a rate of 6% on the then outstanding balances of the loans with a 10 year amortization schedule.  The Adams note will be paid in full on or before December 31, 2011.

5.4    Deferral of Fees and Employment of Outside Specialists.

The affiliates of Judy Carr and Lee Kriegsfeld have agreed to defer all of the real estate commissions and improvement supervision fees that they would earn from 422, including those due in pending unfunded draws.  The deferral of the 3% commission on existing contracts is approximately $84,000. The deferred improvement supervision fee is $35,000 outstanding for completed work and approximately $31,500 (3.5% of $900,000) for the completion of 422, a total of $66,500 in supervision fees plus $84,000 in commissions for a total of $149,500.  These commissions and fees will not be paid until after secured creditors are paid in full.

The Debtor is also speaking to outside sales agents to determine if they could provide additional assistance with sales.

5.5    Litigation.

The Debtor has objected to Adams' Claims and expects that matter to be resolved in the Bankruptcy Court.  All other litigation involving the collection of pre-petition obligations will be resolved by the Confirmation of this Plan.

5.6    Objections to Claims.

The Debtor shall have the right to file and prosecute an objection to the allowance of any Claim by any party against the Debtor's bankruptcy Estate.  Any such objection shall be filed with the Bankruptcy Court and served on the holder of such Claim.  Except to the extent a Claim is expressly allowed under the Plan, all defenses to the Claims are preserved, including any right to setoff by Debtor or Debtor's Estate.  Any such defense, including setoff, may be asserted by the Debtor's estate in an objection to any Claim.

11

5.7     Effect of Confirmation.

Upon the entry of the Confirmation Order, all of the property of the Debtor's Estate shall be vested in the Debtor.  Except as provided in this Plan, all such property shall be free and clear of all Claims and the interest of Creditors and other parties in interest.  The Debtor shall manage its affairs without further order of the Court, and shall not be liable for debts from which the Debtor has been discharged, except as provided in this Plan.

Upon the entry of the Confirmation Order, the provisions of this Plan bind the Debtor, any Entity acquiring property under the Plan, any Creditor and any Interestholder, and any other Entity with a claimed interest in the Debtor or Debtor's Assets, whether or not such a Creditor, Entity or Interestholder has accepted this Plan.

## ARTICLE VI
## CONFIRMATION

6.1     Confirmation.

The Debtor requests Confirmation of the Plan under § 1129(a) and § 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan, to the extent required or permitted by applicable law.

## ARTICLE VII
## EFFECTIVE DATE CONDITIONS

7.1     Conditions to Effective Date.

The Plan shall not be consummated and the Effective Date shall not occur unless and until each of the following conditions has been satisfied or duly waived as specified below:

7.1.1  The Clerk of the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor, and such order shall have become a Final Order.

7.1.2   Thirty days shall have passed from the occurrence of the conditions in Section 7.1.1.

7.2     Waiver of Conditions to the Effective Date.

The Debtor may waive any of the conditions to the Effective Date.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THE PLAN, EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS

8.1     Impaired Classes of Claims and Interests Entitled to Vote.   Claimholders or Interest Holders in each Impaired Class of Claims or Interests are entitled to vote as a class to accept or reject the Plan.

12

  8.2 <u>Acceptance by an Impaired Class</u>.  Pursuant to § 1126(c) of the Bankruptcy Code and except as provided in § 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if (a) the holders of at least two-thirds (2/3) in dollar amount and (b) more than one-half (1/2) in number of the Allowed Claims of such Class actually voting on the Plan have voted to accept the Plan.

  8.3 <u>Confirmation Pursuant to § 1129(b) of the Bankruptcy Code</u>. To the extent that any Impaired Class entitled to vote rejects the Plan, or is deemed to have rejected it, Debtor hereby requests confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code.

## ARTICLE IX
## RETENTION OF JURISDICTION

  9.1 <u>Retention Of Jurisdiction</u>.

  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to § 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

  9.1.1 To hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

  9.1.2 To consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

  9.1.3 To enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located;

  9.1.4 To hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

  9.1.5 To hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation, or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

  9.1.6 To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including,

13

without limitation, matters involving federal, state, and local taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

   9.1.7 To hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date;

   9.1.8 To hear and determine any and all Avoidance Actions that are commenced in accordance with the Plan after the Effective Date;

   9.1.9 To effectuate distributions under and performance of the provisions of the Plan;

   9.1.10 To hear and determine any applications to modify provisions of the Plan to the full extent permitted by the Plan, Bankruptcy Code, and Bankruptcy Rules;

   9.1.11 To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, documents entered into in order to implement the Plan, the Exhibits to the Plan, and annexes thereto, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

   9.1.12 To determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

   9.1.13 To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Case or the Plan;

   9.1.14 To enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

   9.1.15 To determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

   9.1.16 To resolve any disputes regarding fees and expenses of professionals employed by the Debtor.

### ARTICLE X
### MISCELLANEOUS PROVISIONS

10.1 Exemption from Transfer Taxes.

To the maximum extent provided by 11 U.S.C. § 1146(c), transfers are exempt from transfer tax. No transfers are anticipated.

14

    10.2    <u>Modification of the Plan.</u>

Subject to the restrictions on modifications to the Plan set forth in the Plan, the Bankruptcy Code and the Bankruptcy Rules, the Debtor may alter, amend, or modify the Plan before its substantial consummation.

    10.3    <u>Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw the Plan prior to the Confirmation Date. If the Plan is withdrawn, if Confirmation does not occur, or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (2) constitute an admission of any fact or legal conclusion by the Debtor, or any other Entity; or (3) prejudice in any manner the rights of the Debtor, or any other Entity in any further proceedings involving the Debtor, or any other Entity.

    10.4    <u>Successors and Assigns</u>.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

    10.5    <u>Saturday, Sunday, or Legal Holiday</u>.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

    10.6    <u>Post-Effective Date of Evidence of Claims or Interests</u>.

Except as otherwise expressly provided in the Plan, notes, bonds, stock certificates, and other evidences of Claims against or Interests in the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

    10.7    <u>Governing Law</u>.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

15

10.8   No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including liability on any Claim.

10.9   Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

10.10   Rules of Interpretation

For the purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) whenever the words "include," "includes" or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretations of the Plan; and (h) any term used in the Plan that is not defined in the Plan, either in this Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, and the rules of construction set forth in Bankruptcy Code § 102 shall apply.

10.11   Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b), and may be reduced in accordance with Bankruptcy Rule 9006(c).

16

DB04/837611.0002/2779821.1 WP01

Dated:  May 7, 2010                                         Respectfully submitted,

                                               /s/ Janet M. Nesse
                                               Janet M. Nesse, Bar # 358514
                                               Stinson Morrison Hecker LLP
                                               1150 18th Street N.W., Suite 800
                                               Washington, DC  20036
                                               Tel. (202) 785-9100
                                               Fax (202) 785-9163
                                               jnesse@stinson.com

                                               *Counsel for the Chapter 11 Debtor*

DB04/837611.0002/2779821.1 WP01